**IT IS ORDERED as set forth below:**



Date: January 24, 2024

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>DAVID WALDEMAR SAMS,<br><br>Debtor. | Case No. 23-52314-WLH<br><br>Chapter 13 |
| EVOLVED CINEMA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DAVID WALDEMAR SAMS,<br><br>Defendant. | Adversary Proceeding No. 23-5082 |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

1

**THIS MATTER** is before the Court on Plaintiff's Renewed Motion for Default Judgment (Doc. No. 22) (the "Motion"). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I), and the Court has jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

## I. INTRODUCTION

Plaintiff commenced this adversary proceeding by filing a complaint on June 12, 2023. On July 3, 2023, Plaintiff filed a certificate of service pursuant to Bankruptcy Rule 7004(b) certifying that a copy of the complaint and a summons were sent by United States mail with adequate postage to Defendant (Doc. No. 6). On July 7, 2023, Plaintiff amended the complaint (Doc. No. 7). Plaintiff did not request a new summons. On July 10, 2023, Plaintiff requested entry of default for Defendant's failure to file an answer or otherwise respond to the complaint. On August 10, 2023, the Clerk entered default against Defendant pursuant to Bankruptcy Rule 7055. On August 16, 2023, Plaintiff filed a Motion for Default Judgment (Doc. No. 11). On October 25, 2023, the Court held a hearing on Plaintiff's Motion for Default Judgment and status conference in the above-styled adversary proceeding. The Court instructed Plaintiff to obtain a new summons and serve it and the Amended Complaint on Defendant. Since a new summons was necessary, the Court set aside the default on October 25, 2023 (Doc. No. 15).

A new summons was issued, and Plaintiff certified that a copy of the Amended Complaint and a summons were sent, by United States Mail, to Defendant (Doc. No. 19). On December 11, 2023, Plaintiff again requested entry of default for Defendant's failure to file an answer or otherwise respond to the Amended Complaint (Doc. No. 21). On December 12, 2023, the Clerk entered default against Defendant pursuant to Bankruptcy Rule 7055. On December 15, 2023, Plaintiff filed the Renewed Motion for Default Judgment. Defendant had until

December 29, 2023 to respond. He failed to file a response; consequently, the Motion is deemed unopposed pursuant to Local Rule 7007-1(c).

Entry of default judgment under Fed. R. Bankr. P. 7055 is discretionary. In re Alam, 314 B.R. 834, 837 (Bankr. N.D. Ga. 2004). "[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). A default only admits well-pled allegations of fact and does not admit conclusions of law. Id. Only facts established by the pleadings can support a default judgment. Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988).

In determining whether the allegations in a complaint are sufficient, the Supreme Court has provided guidance in both Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). In these cases, the Supreme Court explained, while "detailed factual allegations" are not required, the pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Instead, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

## II. FACTS

Based on the well plead allegations in the Amended Complaint, the Court finds as follows:

Plaintiff is in the video production business. Defendant is a producer of video and other media content and acted as a broker, or middleman. Clients contacted him for video services, and he in turn contacted Plaintiff to produce video content for certain clients.

3

Defendant engaged Plaintiff to produce content for Walgreens. Defendant led Plaintiff to believe that he had been paid the full pre-approved cost up front and was holding it in trust before Plaintiff began work on the project. Plaintiff expended costs on labor, equipment, and media asset licensing on the project, which it completed on May 18, 2022. Plaintiff sought payment from Defendant. $5,001.21 remains unpaid (the "Walgreens Debt").

Defendant engaged Plaintiff to complete a project for Youth Villages. He promised that the costs and funds would be earmarked for Plaintiff and represented that the project had been approved by the client. Plaintiff expended costs on labor, equipment, and media asset licensing on the project, which it completed on April 7, 2022. Plaintiff sought payment from Defendant. Defendant did not pay Plaintiff. In March 2023, Plaintiff contacted Youth Villages directly about the project and learned that Youth Villages had paid Defendant directly for the work done. $12,147.14 remains unpaid to Plaintiff (the "Youth Villages Debt").

Defendant filed for relief under Chapter 7 of the Bankruptcy Code on March 9, 2023. On June 12, 2023, Plaintiff filed the Complaint, which it amended with the assistance of counsel on July 3, 2023. Plaintiff seeks a determination that the outstanding debt of $5,001.21 for the Walgreens project and $12,147.14 for the Youth Villages project are nondischargeable pursuant to section 523(a)(2)(A). Plaintiff also seeks an injunction against the Defendant's continued use of any videos and other media created by Plaintiff.

III. ANALYSIS

 a. Nondischargeability

A presumption exists all debts owed by the debtor are dischargeable unless the party contending otherwise proves nondischargeability by a preponderance of the evidence. 11 U.S.C. § 727(b); Grogan v. Garner, 498 U.S. 279, 287-88 (1991); St. Laurent v. Ambrose (In re St.

4

Laurent), 991 F.2d 672, 680 (11th Cir. 1993). The purpose of this "fresh start" is to protect the "honest but unfortunate" debtors. U.S. v. Fretz (In re Fretz), 244 F.3d 1323, 1326 (11th Cir. 2001). Exceptions to discharge are, therefore, narrowly construed against the creditor and in favor of the debtor. Equitable Bank v. Miller (In re Miller), 39 F.3d 301 (11th Cir. 1994); St. Laurent, 991 F.2d at 680.

Plaintiff contends the Walgreens Debt and the Youth Villages Debt are nondischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code. To succeed in proving a false representation under section 523(a)(2)(A), a creditor must prove: (1) the debtor made a false representation with the intention of deceiving the creditor; (2) the creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation. Presley v. Presley (In re Presley), 490 B.R. 633 (Bankr. N.D. Ga. 2013). To establish a claim under false pretenses, the creditor must prove: "(1) the defendant made an omission or implied misrepresentation; (2) promoted knowingly and willingly by the defendant; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff; (4) which wrongfully induced the plaintiff to advance money, property, or credit to the defendant." Cawthon v. Cawthon (In re Cawthon), 594 B.R. 913, 920 (Bankr. N.D. Ga. 2018). "As distinguished from false representation, which is an express misrepresentation, false pretense involves an implied misrepresentation or conduct intended to create and foster a false impression[.]" Minority Equity Capital Corp. v. Weinstein (In re Weinstein), 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983). Fraud is a generic term which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." Burke v. Burke (In re Burke), 405 B.R. 626, 646 (Bankr. N.D. Ill. 2009). In all instances, the creditor must also show justifiable reliance on the debtor's false pretenses, false representation, or actual fraud. Field v. Mans, 516

5

U.S. 59, 74 (1995); see also Bankers Healthcare Grp., LLC v. Moss (In re Moss), 598 B.R. 508, 514 (Bankr. N.D. Ga. 2019).

A breach of contract is not a misrepresentation, false pretense, or fraud unless the debtor never intended to comply with the contract. Res-Ga Diamond Meadows, LLC v. Robertson (In re Robertson), 576 B.R. 684, 716 (Bankr. N.D. Ga. 2017) (citations omitted). To raise a section 523(a)(2)(A) claim based on a debtor's failure to perform a promise, a creditor must show that the debtor lacked the subjective intent to perform the promise when the promise was made. In re Cole, 2021 WL 784886, at *5 (Bankr. M.D. Fla. Mar. 1, 2021), aff'd, 2022 WL 1096091 (M.D. Fla. Mar. 31, 2022). "It is a matter of well-entrenched jurisprudence that a contractor's failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud, misrepresentation or false pretenses under § 523(a)(2)(A). . . . Otherwise, almost any debt arising out of a failure to complete a contract would be nondischargeable and that is not the way the statute is written." Strominger v. Giquinto (In re Giquinto), 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008); In re Layne, 517 B.R. 778, 783 (Bankr. E.D. Ky. 2014) ("A failed promise to repay is the basis for every loan default."). Instead, the plaintiff must establish that the debtor entered into the contract, never intending to adhere to its terms. In re Maurer, 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990); c.f. In re Moore, 620 B.R. 617, 630 (Bankr. N.D. Ill. 2020) (representations to do future acts do not constitute false representations for purpose of section 523(a)(2)(A) unless the debtors never intended to perform).

For example, in Smithyman v. Crawford (In re Crawford), 2023 WL 6307067, at *1 (Bankr. N.D. Ga. Sept. 27, 2023), the plaintiff alleged he was fraudulently induced to enter into the contract because defendant never intended to comply with it, but plaintiff pointed to no evidence supporting an allegation that defendant never intended to comply with the guaranty.

6

Instead, the facts alleged related to defendant's post-closing activities and, while the complaint alleged false representations were made, it failed to identify any specific statements that were made prior to entering into the transaction. Accordingly, the court found no basis for declaring the debt nondischargeable under section 523(a)(2)(A). See also In re Viciedo, 612 B.R. 233, 240 (Bankr. M.D. Fla. 2020) (finding plaintiff failed to meet its burden of proving a fraudulent inducement and finding, instead, the arrangement was simply an ill-conceived business relationship).

### i. Walgreens Debt

The well pled facts in the Amended Complaint establish Defendant's conduct with regards to the Walgreens Debt falls within section 523(a)(2)(A). Plaintiff alleges, and based on Defendant's default it is deemed admitted, that Defendant engaged Plaintiff to produce content for Walgreens and falsely represented that that he had been paid the full pre-approved cost up front and was holding it in trust before Plaintiff began work on the project. Based on Defendant's representations, Plaintiff began working on the Walgreens project and expended costs on labor, equipment, and media asset licensing on the project, which it completed on May 18, 2022. The Walgreens Debt totaling $5,001.21 remains unpaid. Based on the well-pled allegations, the Court concludes Defendant misrepresented that he had been entrusted with and held the funds for the Walgreens project to induce Plaintiff to start working on the Walgreens project. See e.g., Merchs. Nat'l Bank & Trust Co. of Indianapolis v. Pappas (In re Pappas), 661 F.2d 82, 86 (7th Cir. 1981) (where a debtor is entrusted with money to be used for a specific purpose and he has no apparent intention of using the money for that purpose, then a misrepresentation exists upon which a debt can be properly held non-dischargeable). Plaintiff reasonably relied on the representation and was damaged by Defendant's failure to pay. Accordingly, Plaintiff has

7

established the elements of section 523(a)(2)(A) and the Walgreens Debt is deemed nondischargeable.

### ii. Youth Villages Debt

The facts do not support a finding on default that the debt owed for the Youth Villages project is nondischargeable. The Amended Complaint alleges Defendant promised that the costs and funds would be earmarked for Plaintiff and represented that the project had been approved by the client. The representation that the project had been approved by the client was apparently true, as the Amended Complaint also alleges Youth Villages paid Defendant for the services. But representations as to future acts, i.e. whether the funds would be earmarked in the future, do not constitute false representations unless Defendant never intended to perform, and there is no well pled allegation that Defendant never intended to set aside the funds for Plaintiff. Further, post-performance misrepresentations do not lead to the debt being nondischargeable. The debt must have arisen from the misrepresentation. In re Brown, 442 B.R. 585, 618 (Bankr. E.D. Mich. 2011) ("There must be a direct link between the alleged fraud and the creation of the debt."). Once the debt exists, misleading excuses for not paying do not retroactively make it a nondischargeable debt. See Smithyman, 2023 WL 6307067; In re Hunter, 535 B.R. 203, 213 (Bankr. N.D. Ohio 2015) ("A broken promise alone will not establish the existence of any intent to deceive."). Accordingly, Plaintiff has not sufficiently pled the elements of section 523(a)(2)(A) as to the Youth Villages Debt to justify entry of default judgment.

### b. Injunctive Relief

Plaintiff seeks an injunction against the Defendant's continued use of any videos and other media created by Plaintiff (the "Material"). Beyond the Walgreens and Youth Villages videos, no other facts are plead as to what is included in the "Material." The Supreme Court has

characterized injunctive relief as "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). "Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' 11 U.S.C. § 105(a) (2005). A bankruptcy court, through [section] 105, may impose an injunction when appropriate." Henkel v. Carpenter (In re Carpenter), 2006 WL 8463205, at *5 (Bankr. M.D. Fla. Mar. 24, 2006). A request for an injunction must be specific and state with particularity the grounds for such relief; general prayers and recitations of authority do not suffice. United States v. Gilmore, 226 B.R. 567, 575 (E.D. Tex. 1998).

The Amended Complaint states it is seeking a permanent injunction. To prevail on a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Menotte v. Willis (In re Willis), 411 B.R. 783, 786 (Bankr. S.D. Fla. 2009) (citing Norfolk S. Ry. Co. v. Alabama Dep't of Revenue, 550 F.3d 1306, 1312 n.10 (11th Cir. 2008)).

The first factor, irreparable injury, "is the *sine qua non* of injunctive relief.'" Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a[n] [injunction], are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974). A failure to seek injunctive relief for a long period

9

of time may indicate a lack of irreparable harm. See Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc., 620 F.Supp.2d 158, 162 (D. Mass. 2009) (failure to seek injunctive relief for nearly a year "belie[d] the assertion that they are irreparably harmed by the deprivation."). But proof of a likelihood of consumer confusion may indicate irreparable harm. Beastie Boys v. Monster Energy Co., 87 F.Supp.3d 672, 677 (S.D.N.Y. 2015) (finding a presumption of irreparable harm where both a jury agreed and the hard evidence supported such a finding).

Second, monetary damages must be inadequate. A party seeking injunctive relief must allege that they will be harmed without the injunction past monetary compensation. Monetary damages are inadequate, for example, where there is the possibility of future harm or infringement to the movant. See e.g. Warner Bros. Records, Inc., v. Novak, 2007 WL 1381748, at *3 (D.N.J. May 9, 2007).

Third, Courts must balance the relative harm as between the movant and the party opposing the injunction. Carpenter, 2006 WL 8463205, at *6.

Finally, the movant must demonstrate that the public interest would not be disserved by a permanent injunction. "Entry of a preliminary injunction furthers the public interest by stopping [a defendant's] continued trademark infringement, unfair competition, and contractual breaches. The public has the right not to be confused or defrauded as to the source or sponsorship of the goods and services offered by [the defendant] or as to the identity of the owners of the trademarks and service marks used in connection with those goods and services." Duct Dr. USA, Inc. v. Edwards, 2019 WL 2713060, at *2 (N.D. Ga. Apr. 26, 2019).

Plaintiff has not established it is entitled to injunctive relief on a default. The Amended Complaint alleges:

> The Website is displaying videos produced by Evolved Cinema that have not been purchased by Defendant. Evolved Cinema retains an ownership interest in the videos

>produced by Evolved Cinema. Defendant has no right to use them until the videos are purchased by Defendant and all rights are transferred to him.

(Doc. No. 7 ¶ 34.) Plaintiff alleges Defendant should have no use for the Material, and "all Material can easily be removed, and, to the extent possible, returned to Evolved Cinema and otherwise destroyed." (Doc. No. 7 ¶ 47.) These allegations, however, are not sufficient to justify entry of an injunction on a motion to for default.

First, Plaintiff has presented no evidence of irreparable harm. Plaintiff alleges, "[i]f Defendant is allowed to continue to use the Material, it will cause immediate and irreparable harm to Evolved Cinema, including loss and damages to it, including to its reputation and business" (Doc. No. 7 ¶ 48.) This bare-bones allegation is insufficient to warrant injunctive relief. Further, Plaintiff did not seek the return of videos for over a year, and then only in connection with a request to determine an outstanding contractual debt nondischargeable, which contradicts any assertion that it would be irreparably harmed by the continued display of such videos by Defendant. Moreover, the videos have allegedly been delivered to the end user, so removing them from Defendant's website does not "return" the videos to Plaintiff. Finally, while Plaintiff has alleged that it retains an ownership interest in the videos, that allegation is conclusory. The contract at issue is not attached, and the videos have been delivered to the end user. The Complaint contains insufficient allegations as to how Plaintiff retains an interest in the videos vis-à-vis Defendant, but does not retain an interest in them as to Walgreens or Youth Villages.

As to the second factor, Plaintiff has not established that monetary damages would be inadequate. In fact, the Motion seeks a determination that the Walgreens Debt and Youth Villages Debt in specific dollar amounts are nondischargeable. As to the third factor, Plaintiff alleges it is "easy" to remove the videos, but that is not the sole determinative factor as to

11

relative harm. Plaintiff has not alleged any facts to supports its assertion that the videos delivered to third parties and playing on Defendant's website caused Plaintiff anything other than frustration. Finally, there are no facts or allegations involving the public interest. Although Plaintiff alleges it retains ownership rights over the videos, that conclusion has no facts to support it that could implicate infringement or other licensing issues. Accordingly, Plaintiff has not established it is entitled to injunctive relief and the request for an injunction on default will be denied.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Motion is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** as to the Walgreens Debt. The Walgreens Debt totaling $5,001.21 is deemed nondischargeable pursuant to section 523(a)(2)(A).

**IT IS FURTHER ORDERED** that the Motion is **DENIED** as to the Youth Villages Debt.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** as to injunctive relief.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to proceed to trial on the Amended Complaint, it shall submit a pre-trial order in accordance with BLR 7016-2 within 30 days. If the pre-trial order is not timely filed, the Court will enter judgment for Plaintiff on the Walgreens Debt but against Plaintiff on all other requests for relief. Alternatively, Plaintiff may move to dismiss the Amended Complaint as to Youth Villages and the request for injunctive relief so the Court can enter judgment on the Walgreens Debt, as set forth herein.

**END OF DOCUMENT**

**Distribution List**

Shayna M. Steinfeld
Steinfeld & Steinfeld PC
11B Lenox Pointe NE
Atlanta, GA 30324

Evolved Cinema LLC
Hunter Hughes
1204 Barnes St NW
Unit B
Atlanta, GA 30318

Aaron Weinberg
The Semrad Law Firm LLC
6125 Old National Highway, Suite 121
College Park, GA 30349

David Waldemar Sams
540 Venice Road
Templeton, CA 93465